```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
NORA ELENA OCHOA-SUAREZ,            :
                                       07 Civ. 9275(JFK)
       Petitioner,                  :  03 Cr. 747 (JFK)
                                    :
   -against-                           MEMORANDUM OPINION
                                    :  & ORDER
UNITED STATES OF AMERICA,
                                    :
       Respondent.
-----------------------------------X
```

**JOHN F. KEENAN, United States District Judge:**

Petitioner Nora Elena Ochoa-Suarez pleaded guilty to participating in a heroin distribution conspiracy and was sentenced to a mandatory minimum term of ten years' imprisonment. She moves to vacate her conviction pursuant to 28 U.S.C. § 2255 on the ground that her attorney failed to properly explain to her the sentencing consequences of her plea. For the reasons that follow, the motion is denied.

## BACKGROUND

a. Arrest

On or about May 21, 2003, law enforcement agents in Florida arrested Edison Largo at a bus station. At the time, Largo had a black duffle bag containing approximately 2,100 grams of heroin. Largo informed the agents that he had been hired by petitioner Ochoa-Suarez to pick up the heroin in Florida and deliver it to her in New York.

Agents accompanied Largo back to New York. At their direction, Largo placed two telephone calls to Ochoa-Suarez and arranged to deliver the heroin to her at a Wendy's restaurant in Queens, New York.  At approximately 11:15 a.m., agents observed Ochoa-Suarez arrive near the restaurant in a white minivan. Largo approached the minivan's front passenger side door and placed the black duffle bag containing the heroin on the seat. At that point, agents intervened and arrested Ochoa-Suarez.  A search of the van turned up approximately $28,020.

    b.  <u>Guilty Plea</u>

On June 12, 2003, a grand jury returned a one-count indictment charging Ochoa-Suarez with conspiracy to possess with intent to distribute one kilogram and more of heroin, in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A), and 846. Represented by her retained attorney, Ms. Sabrina Shroff, petitioner eventually decided to plead guilty without the benefit of a plea bargain.

About a month before the plea, the government provided Ms. Shroff with a letter, pursuant to <u>United States v. Pimentel</u>, 932 F.2d 1029, 1034 (2d Cir. 1991), setting forth the government's position on the application of the guidelines to the case.  The letter stated that Ochoa-Suarez's offense carried a mandatory minimum sentence of ten years and a maximum sentence

of life. It calculated her base offense level to be 34 because of the amount of heroin for which she was responsible. The letter also recommended a three-level enhancement pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 3B1.1 because she was a manager or supervisor (but not an organizer or leader) of the conspiracy. This produced an adjusted offense level of 37, which, combined with a Criminal History Category of I, yielded an applicable guideline range of 210 to 262 months' imprisonment.

On March 9, 2004, Ochoa-Suarez appeared before me and, assisted by a translator, pleaded guilty to the sole count of the indictment. Before accepting her plea, I conducted a hearing pursuant to Rule 11 of the Federal Rules of Criminal Procedure. At the outset of the hearing, Ochoa-Suarez was placed under oath and admonished that any false statements could lead to future prosecution. Ochoa-Suarez affirmed that she had never been under the care of a doctor or psychologist for mental or emotional problems, had no history of substance abuse, was in good health and was not then under the influence of any drugs or alcohol. She stated that she had seen a copy of the indictment and discussed it with her attorney, had told her attorney everything about her case, and was satisfied with her attorney's representation.

The Court then confirmed that she understood that she had the right to go to trial, where she would be presumed innocent unless the government proved her guilty beyond a reasonable doubt to the satisfaction of all twelve jurors. The Court also explained all of the attendant rights she would enjoy at trial. Petitioner stated that she understood these rights and was willing to waive them by pleading guilty.

Next, Ochoa-Suarez was informed of the direct and collateral consequences of her guilty plea. The Court stated that her conviction carried a statutory maximum sentence of life and that "[t]here is a mandatory minimum period here of imprisonment of ten years." (Plea Tr. at 7.) Ochoa-Suarez responded that she understood this. The Court also informed her of the maximum period of supervised release and the maximum fine that she faced, and the likelihood of deportation upon her release from prison. In addition, I advised her that the government, in its <u>Pimentel</u> letter, calculated her applicable guideline sentencing range to be 210 to 262 months. I then explained that I was required to consider the guidelines in determining her sentence, and that I alone would determine her sentence.

Ochoa-Suarez was then asked whether she had "been induced to offer to plead guilty by reason of any promise or

statement by anybody to the effect that you would get leniency or special treatment by pleading guilty instead of going to trial." (Plea Tr. at 10). Her response was "No, your honor." (Id.) She also confirmed that she was pleading guilty of her own free will and without any pressure or threats of force. She stated that there was nothing she wished to ask about the consequences of her plea because her "attorney [had] already explained to me all the important things." (Id. at 11).

Ochoa-Suarez admitted that she agreed with at least one other person to possess one kilogram and more of heroin with the intent to distribute it. Following this allocution, I accepted her guilty plea.

   c. Sentencing

After the plea, the Probation Office prepared a pre-sentence report (the "PSR"). The PSR calculated Ochoa-Suarez's base offense level at 34 and recommended a three-level enhancement for her managerial role in the conspiracy. Unlike the government's Pimentel letter, the PSR recommended crediting her with a three-level downward adjustment for acceptance of responsibility. This produced a recommended adjusted offense level of 34, which, combined with a Criminal History Category of I, yielded an applicable guideline range of 151 to 188 months.

Prior to sentence, Ms. Shroff submitted a sentencing memorandum on her client's behalf.  The memorandum asserted, among other things, that Ochoa-Suarez was not a manager or supervisor in the conspiracy and consequently was eligible for relief from the ten-year statutory minimum, pursuant to § 5C1.2, the "safety valve."

A <u>Fatico</u> hearing was held on December 22, 2004 to determine whether Ochoa-Suarez played a managerial or supervisory role in the offense.  At the hearing, the government presented Ochoa-Suarez's co-conspirator, Largo.  Largo testified that a friend introduced him to Ochoa-Suarez in 2002 as someone who could help him earn extra cash.  He testified that Ochoa-Suarez recruited him into the conspiracy, scheduled his trips to Florida to pick up drugs, provided his travel funds and tickets, and paid him after each trip.

Immediately before a sentencing hearing held on February 7, 2005, I distributed a written memorandum opinion.  In the opinion, I concluded that Ochoa-Suarez was ineligible for safety valve treatment, and therefore subject to the mandatory minimum, because she failed to satisfy two of the safety valve's five criteria:  (1) she was a manager or supervisor in the offense, as Largo's testimony at the <u>Fatico</u> hearing established; and (2) she failed to make full and truthful disclosures about

the offense to the government.[1]  I also indicated my intention to sentence her to the statutory minimum of ten years, a significantly break from the 151 to 188 months recommended in the PSR and the 210 to 262 months recommended in the government's Pimentel letter.

At the sentencing hearing, I expressed my opinion to Ochoa-Suarez that her attorney, Ms. Shroff, "has done an excellent job on your behalf.  She has worked very hard for you and she certainly has represented you to the utmost." (Sent. Tr. at 3).  Ms. Shroff confirmed that she had gone over the PSR with her client and had no objections to the PSR other than those raised in her sentencing memorandum.  Before sentence was announced, the defendant was given an opportunity to address the Court.  She apologized for her crime and acknowledged that she was receiving the minimum sentence possible, but pleaded for a lower sentence. (Id. at 7).  The Court imposed a sentence of ten

---

[1] A few weeks prior Ochoa-Suarez's sentencing, the Supreme Court issued its decisions in Booker and Fan Fan.  Although I found in my February 7, 2005 opinion that Ochoa-Suarez was a manager or supervisor and that this disqualified her from the safety valve, I initially interpreted Booker and Fan Fan as precluding me from enhancing her sentencing range based upon this finding. See United States v. Ochoa-Suarez, 03 Cr. 747 (JFK), slip op. at 3-4 (S.D.N.Y. Feb. 7, 2005).  On the next day, I issued a corrected decision recognizing that Booker and Fan Fan did not prohibit me from enhancing her sentence based on my finding that she played a managerial role. United States v. Ochoa-Suarez, 03 Cr. 747 (JFK), 2005 WL 287400 (S.D.N.Y. Feb. 8, 2005). Nevertheless, I determined after considering the sentencing factors in 18 U.S.C. § 3553(a) that a sentence of ten years was appropriate under the now-advisory guidelines.

years' imprisonment to be followed by five years of supervised release.

After sentencing, Ochoa-Suarez filed a timely notice of appeal. Ms. Shroff filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967), and moved to withdraw as counsel. The government moved for summary affirmance. Ochoa-Suarez was informed that she could request another attorney or file a pro se appellate brief to challenge her conviction, but she did not do so.[2] On September 1, 2006, the Court of Appeals found that there were no non-frivolous issues for appeal and granted summary affirmance. See United States v. Ochoa-Suarez, No. 05-1059-cr (2d Cir. Sept. 1, 2006).

**DISCUSSION**

In her habeas petition, Ochoa-Suarez alleges that her attorney "always explained" that she would qualify for the safety valve and, therefore, would not be subject to the ten-year minimum. (Pet'n at 14.) She maintains that she would not have pleaded guilty had her attorney informed her that the Court might find that she was a manager or supervisor in the heroin conspiracy, which would make her ineligible for the safety

---

[2] Her failure to raise a claim on direct appeal that she had misunderstood the consequences of the plea does not bar her from making the related claim in a collateral attack that her attorney failed to properly advised her of those consequences. See Zhang v. United States, 506 F.3d 162, 166 (2d Cir. 2007) (drawing this

valve. (Id. at 14-15). Ochoa-Suarez requests an evidentiary hearing to substantiate her ineffective assistance claim and, ultimately, to have her plea set aside.

A. Applicable Legal Standards

Courts apply the framework established in Strickland v. Washington, 466 U.S. 668 (1984) to evaluate a section 2255 claim that a guilty plea was involuntary or unknowing due to ineffective assistance of counsel. United States v. Hernandez, 242 F.3d 110, 112 (2d Cir. 2001) (citing Hill v. Lockhart, 474 U.S. 52, 57-58, (1985) (applying Strickland to the context of guilty pleas)). The defendant bears the burden of showing that: (1) "counsel's representation fell below an objective standard of reasonableness;" and (2) "there is a reasonable probability that, but for counsel's errors, [defendant] would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

Section 2255 provides that "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C.

---

distinction and stating that the procedural default rule "does not generally apply to claims of ineffective assistance of counsel.")

§ 2255(b); see also Chang v. United States, 250 F.3d 79, 86 (2d Cir. 2001) (holding that a district court has discretion to rely on documentary evidence in deciding habeas petition, and need not conduct a "full-blown testimonial hearing" when in-court testimony "would not offer any reasonable chance of altering [the court's] view of the facts").

    B. Analysis

Petitioner testified under oath at the Rule 11 proceeding that she knew that her plea could subject her to a ten-year mandatory minimum sentence, belying her present claim that her attorney had led her to believe otherwise. The Court informed Ochoa-Suarez that "[t]here is a mandatory minimum period here of ten years," and she acknowledged that she understood this. (Plea Tr. at 7). She also affirmed that she was not induced to plead guilty by any promise or statement by anybody to the effect that she would receive leniency or special treatment by pleading guilty instead of going to trial. This undercuts her claim that her attorney promised or guaranteed that she would qualify for the safety valve. Petitioner further stated that she understood that the Court alone would fix her sentence based on its own consideration of the guidelines. This undermines her claim that she believed her attorney was in a position to make any promise or guarantee. The Court also

informed petitioner that the government, in its Pimentel letter, took the position that her applicable guideline range was 210 to 262 months. From this, Ochoa-Suarez knew that she possibly faced a sentence far above the statutory minimum. Petitioner's claim therefore "fails on the merits because [her] factual assertions regarding [her] counsel's alleged ineffectiveness simply contradict [her] sworn statements at the plea allocution." United States v. Hernandez, 242 F.3d 110, 114 (2d Cir. 2001). Therefore, the claim may be summarily rejected. See id. at 112 (stating that a "district court is entitled to rely upon the defendant's sworn statements, made in open court with the assistance of a translator, that he understood the consequences of his plea, had discussed the plea with his attorney . . . and had been made no promises except those contained in the plea agreement"); United States v. Soler, 124 Fed. Appx. 62, 64, 2005 WL 545433, *2 (2d Cir. 2005) (summary order) (rejecting defendant's ineffective assistance claim that he was unaware that his plea would subject him to a mandatory life sentence, where during plea colloquy defendant was informed of and stated that he understood this); see also Blackledge v. Allison, 431 U.S. 63, 73 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics

is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.").

In addition, petitioner expressed no surprise at sentencing when the Court imposed the mandatory minimum of ten years. Nor did she ever seek to withdraw her plea or attack it on direct appeal on the ground that she had not understood that the ten-year minimum might apply. This further undermines the claim, raised for the first time more than three years after sentencing, that she was misled by her attorney about the penalty that she faced. In truth, Ochoa-Suarez received a tremendous break—31 months below the minimum recommended in the PSR and 90 months below the minimum recommended in the government's Pimentel letter. This favorable outcome was largely attributable to Ms. Shroff's effective representation.

In an excess of caution, the Court directed Ms. Shroff to submit an affidavit describing her communications with Ochoa-Suarez about the sentencing consequences of her guilty plea. Ms. Shroff attested to advising Ochoa-Suarez, well before her plea, that she faced a statutorily-mandated minimum sentence of ten years. She explained that there were three general ways for a criminal defendant to obtain relief from the mandatory minimum: (1) by going to trial and getting acquitted; (2) by qualifying for safety valve relief; and (3) by cooperating and

providing the government with substantial assistance. She informed Ochoa-Suarez that, if she pleaded guilty, the government would take the position that she was ineligible for safety valve treatment. She also told Ochoa-Suarez that the government expressed in plea negotiations its opinion that she was a manager because she had recruited others into the conspiracy. In addition, Ms. Shroff reviewed with Ochoa-Suarez the government's <u>Pimentel</u> letter, in which the government took the same position. Ms. Shroff explained that at least one witness was prepared to testify that he had been recruited into the conspiracy and supervised by Ochoa-Suarez. She further explained to Ochoa-Suarez that the Court and not the government would determine her eligibility for the safety valve, that she could have a hearing on the issue but that this was a risky way to proceed.

Finally, Ms. Shroff affirms in unequivocal terms that, although she encouraged Ochoa-Suarez to cooperate with the government, she did not make any promise or guarantee that the mandatory minimum would not apply because the Court would find her eligible for the safety valve. Ms. Shroff's detailed account of the proper advice she provided to her client is consistent with Ochoa-Suarez's sworn testimony at the plea colloquy that she had been advised of and understood all

relevant sentencing consequences, including the applicability of the ten-year mandatory minimum.

## CONCLUSION

In sum, because the record conclusively shows that petitioner was properly advised of and understood the sentencing consequences of her plea, her § 2255 motion is DENIED. In addition, Ochoa-Suarez has not made a "substantial showing of the denial of a constitutional right" and this Court will not grant a certificate of appealability. Lucidore v. New York State Div. of Parole, 209 F.3d 107, 112 (2d Cir. 2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4). Ochoa-Suarez has the right to seek a certificate of appealability from the Court of Appeals for the Second Circuit. See 28 U.S.C. § 2253; Miller-El v. Cockrell, 537 U.S. 322 (2003).

SO ORDERED.

Dated:  New York, New York
        May 23, 2008

_____
JOHN F. KEENAN
United States District Judge